IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WOLF APPLIANCE, INC.,

                                                                                      OPINION AND ORDER

                  Plaintiff,

                                                                                      08-cv-322-bbc

      v.

INDEPENDENT SHEET METAL, INC.,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Together with another entity, Westye Group-Midwest, LLC, plaintiff Wolf Appliance, Inc. brought this case against defendant Independent Sheet Metal, Inc. on June 3, 2008, seeking monetary and declaratory relief.  For several years, plaintiff had been ordering stove hoods from defendant, which manufactured the hoods to plaintiff's specifications on a per order basis.  In 2007, plaintiff stopped ordering from defendant and began its own manufacturing.  Although plaintiff had alerted defendant to its manufacturing plan 28 months before it put it into operation, defendant wrote plaintiff to say that it considered plaintiff's course of action a breach of an ongoing relationship.  In addition, defendant asserted that plaintiff owed it almost $800,000 in retroactive surcharges as well as damages

1

for infringement of defendant's copyright and trade dress rights.

In response to what it understood to be defendant's threat of legal action, plaintiff brought this action for declaratory relief, seeking a declaration by the court that (1) it acted properly in discontinuing its purchase of products from defendant effective August 2007 because it had no agreement requiring it to purchase its hoods from defendant in perpetuity or even for a fixed period of time; (2) it does not owe defendant any portion of the retroactive metal surcharges that defendant asserted unilaterally in 2007 for product ordered, received and paid for in 2006; and (3) it has not infringed any intellectual property rights of defendant relating to kitchen hood designs. Plaintiff's co-plaintiff at the time, Westye Group-Midwest, LLC, alleged that defendant had injured it by breaching a contract under which defendant agreed to pay Westye $107,488.60 to repurchase certain inventory.

Two weeks later, defendant filed its own action against plaintiff (and Westye Group) in federal court in Nevada, alleging that plaintiff breached the parties' relationship, failed to pay the alleged surcharges and infringed defendant's copyrights and trade dress. (As to Westye, defendant sought a declaratory judgment that it did not owe Westye any money resulting from Westye's sale of unsold inventory to another distributor after termination of Westye's distributorship with defendant.)

When the case was before the court on defendant's motion to dismiss or transfer, I reviewed the complaint and ordered the case severed under Fed. R. Civ. P. 20(a)(1)(A) and

2

(B), because plaintiff and Westye were suing defendant for entirely different forms of relief arising out of entirely different circumstances and it did not appear that any question of law or fact common to both plaintiffs would arise in the action. Even the motion to dismiss involved different facts and theories as to each plaintiff. Plaintiff was relying on a sufficiency of the contacts argument; Westye was denying that it had agreed at any time to a forum selection clause. In the order of severance, defendant was advised that it had a choice of filing new motions to dismiss or transfer or relying on its original motion.

In response to the court's order, plaintiff and Westye filed separate complaints; Westye's new case was assigned case no. 08-cv-666-bbc. Defendant advised the court that it was standing on its original motion to dismiss. Defendant argued that plaintiff's complaint should be dismissed for lack of personal jurisdiction because defendant's sole contacts with Wisconsin arose out of its manufacture of plaintiff's stove hoods in Nevada. Alternatively, defendant asked that the case be transferred to Nevada. Plaintiff filed a response to the renewed motion to dismiss or transfer, arguing that defendant's daily telephone and email communications with plaintiff in Wisconsin, its weekly telephonic management meetings with plaintiff in Wisconsin and several in-person visits to plaintiff's Wisconsin facilities constituted sufficient contacts with the state to allow this court to exercise personal jurisdiction over defendant. In a supplemental pleading, plaintiff added that defendant had been the party that solicited plaintiff's business, making numerous

3

telephone calls, sending written correspondence, proposing multiple pricing options and making at least one in-person visit (by its president, Steven Williams, and one other employee) before plaintiff placed its first order for hoods.

In the meantime, plaintiff was encountering roadblocks in its efforts to obtain discovery from defendant. On December 10, 2008, United States Magistrate Judge Stephen Crocker granted plaintiff's motion seeking production of documents and court approval of its efforts to communicate with former employees of defendant. He directed defendant to pay plaintiff the costs and attorney fees it had incurred in preparing and filing the motion to compel. At the same time, the magistrate judge granted the motion of defendant's Wisconsin counsel to withdraw from his representation of defendant, but stayed the effective date of his order to January 9, 2009, to give defendant sufficient time to engage new counsel. He advised defendant that if it failed to retain counsel by January 9, it would not be allowed to proceed, because a corporation may not litigate in federal court except through counsel. United States v. Hagerman, 545 F.3d 579, 581-82 (7th Cir. 2008). As of February 12, 2009, no lawyer had filed a notice of appearance on behalf of defendant.

The case is now before the case on a number of motions. Not surprisingly, plaintiff has moved for default judgment against defendant. Dkt. #83. In addition, it is asking for an award of sanctions in the amount of $14,823.64, the fees and costs it incurred in preparing and filing the motion to compel before the magistrate judge. Dkt. #75. It seeks

4

additional sanctions for the fees and costs it says it has incurred in responding to the actions and misrepresentation of defendant and its president throughout this litigation.  Dkt. #78. Allegedly, defendant and its president made false representations in the course of plaintiff's lawsuit, including manufacturing a hood that was a copy of plaintiff's re-engineered hood, producing the fake hood in a mediation session held by the parties with a retired judge and claiming that it was a sample of the hoods it had manufactured for plaintiff; trying to collect fraudulent surcharges on the hoods it manufactured for plaintiff in 2006; and alleging that plaintiff had agreed not to make its own hoods in-house.  Also pending are plaintiff's motion to delay the filing of its motion for default judgment, dkt. #82, which will be denied as moot; its motion for leave to file a supplement to its opposition to defendant's motion to dismiss, dkt. #78, which is granted; and its motion to hold defendant's president jointly liable with defendant for any sanctions imposed on defendant and to enjoin both from litigating in any other forum the same claims defendant has alleged against plaintiff in this action.  Dkt. #83.

Before addressing the pending motions, I must determine whether defendant's contacts with the state of Wisconsin were sufficient to support the exercise of personal jurisdiction over it.  <u>Asset Allocation and Management Co. v. Western Employers Ins. Co.</u>, 892 F.2d 566, 569 (7th Cir. 1989) ("without jurisdiction the court could not properly order [defendant] to do or not do anything").  Wis. Stat. § 801.05 defines the circumstances in

5

which courts in Wisconsin can exercise personal jurisdiction over an individual or entity. Under § 801.05(1)(d), such jurisdiction extends to a defendant who "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Generally, "a defendant has 'substantial and not isolated' contacts with the state if the defendant 'solicit[s], create[s], nuture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state.'" Druschel v. Cloeren, 2006 WI App. 190, ¶ 7, 295 Wis. 2d 858, 864-865, 723 N.W.2d 430, 434 (quoting Stauffacher v. Bennett, 969 F.2d 455, 457 (7th Cir. 1992)).

Plaintiff has submitted evidence that the parties did more than $31 million worth of business over more than four years and that during that time, the parties were in daily communication by telephone, fax machine or email; their staffs had weekly conference calls; and defendant's president made three trips to Wisconsin to meet with plaintiff's personnel in this state. Defendant has not submitted any evidence to refute plaintiff's showing. Plaintiff's evidence is more than sufficient to show that the parties had a continuing business relationship that defendant maintained through long-distance communications and personal contacts. Therefore, this court may exercise personal jurisdiction over defendant.

Defendant has asked for transfer of the action to Nevada, but has shown no good reason for doing so. In any event, the request is now moot, given defendant's abandonment

6

of the litigation.

I turn next to the motion for default judgment, which must be granted in light of defendant's failure to retain counsel before the deadline set by the judge.  Defendant has had a full month beyond the deadline set by the magistrate judge in which to advise the court that it had found representation and seek relief from the January 9 deadline.  Its failure to advise the court that it has retained counsel makes it obvious that it has no intention of defending this case.

Plaintiff is entitled to judgment that (1) the parties never agreed that plaintiff would buy stove hoods from defendant for perpetuity or even for a fixed period of time, so that plaintiff's decision to stop buying hoods from defendant was not a breach of any agreement between the parties; (2) plaintiff is not liable for $368,473 in surcharges on product that plaintiff ordered, received and paid for in 2006; and (3) plaintiff never infringed any copyright, trade dress or other intellectual property rights of defendant.

As for the various motions for sanctions, plaintiff is entitled to the fair and reasonable expenses it incurred in pursuing the motion to compel.  Plaintiff would have been spared the time and effort involved in the filing the motion and arguing it before the magistrate judge had defendant complied with the magistrate judge's orders.  Plaintiff has asked for $14,823.64.  This is a hefty bill for a discovery dispute, but plaintiff has explained that much of it is attributable to defendant's unwillingness to reach an informal resolution of the

7

parties' discovery disputes. The hourly rates are high, but they are presumed reasonable by plaintiff's willingness to pay them. This is the best evidence of market value. Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996). Under the circumstances, I find that the requested amount fairly and reasonably represents the expenses and costs incurred by plaintiff and Westye. I will award one-half of the amount, or $7,411.82, to plaintiff in this case and one-half to Westye in case no. 08-cv-666-bbc.

I turn next to plaintiff's second motion for sanctions, in which plaintiff seeks an award of attorney fees based on defendant's unsupported allegations that (1) plaintiff had an agreement with defendant in which plaintiff committed itself to buying hoods from defendant in perpetuity; (2) plaintiff had agreed to pay surcharges on products ordered, received and paid for in 2006; and (3) plaintiff infringed defendant's intellectual property rights in copyright and trade dress. It seems clear that defendant had no basis for threatening legal action against plaintiff or for bringing suit in Nevada on them. Defendant's failure to produce any evidence to support the allegations, together with the evidence that plaintiff has adduced to rebut them, suggest strongly that defendant would be unable to prove any of its allegations at trial. If so, it was irresponsible for defendant to assert them. However, the question is whether the assertions are properly the subject of sanctions.

Plaintiff is not asking for sanctions under Fed. R. Civ. P. 11 or under 28 U.S.C. § 1927. Instead, it asks the court to use its inherent power to punish defendant for the acts

of its president that amount to a pattern of fraud or bad faith in the conduct of litigation. Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991).  The request will be denied.  Imposing a sanction under a court's inherent powers is a last resort, reserved for truly egregious conduct.  As problematic as defendant's litigation conduct has been, it does not rise to that level.  Compare id. (party and his attorney engaged in extensive misconduct, including setting up sham trust to hide property, abusing legal process in effort to avoid performance of agreement to turn over property and continuing to file meritless motions while avoiding discovery obligations despite repeated warnings that court would not tolerate further misconduct); and Taurus, IP, LLC v. Daimler-Chrysler Corp., 559 F. Supp. 2d 947, 973 (W.D. Wis. 2008) (plaintiff hired defendant's former employee and encouraged him to threaten his former supervisor in Chrysler's legal department that he would file charge of misconduct with bar association if supervisor did not testify in a specific manner about actions he had allegedly directed employee to take while working at Chrysler).  I note, moreover, that neither Chambers nor Taurus IP was a default action.  A court must be particularly cautious about imposing severe sanctions in a default action, when only one party has been heard and the court has had no opportunity to assess for itself the seriousness of the conduct.  The default judgment is a serious sanction in itself.

Plaintiff asks that any sanctions imposed upon defendant extend to defendant *and* to Steven Williams, defendant's president, sole director and shareholder, making the two

9

jointly and severally liable. That motion is moot, now that I have denied plaintiff's motion for sanctions except with respect to defendant's discovery violations. In any event, plaintiff has shown no ground on which this court could exercise jurisdiction over Williams, who has never been named as a defendant.

The last issue that plaintiff raises is its request for an order enjoining defendant from suing plaintiff in any other court on any of the claims they have asserted in this case. That request will be denied as unnecessary. The judgment in this case will have the same claim preclusive effect as any fully litigated judgment. Arthur R. Miller et al., Federal Practice & Procedure § 4442 at 236 (2d ed.). This should be sufficient to protect plaintiff from any future attempts by defendant to renew its unfounded claims.

ORDER

IT IS ORDERED that

1. Plaintiff Wolf Appliance, Inc.'s motion to supplement its opposition to defendant Independent Sheet Metal, Inc.'s motion to dismiss or to transfer, dkt. #83, is GRANTED;

2. Plaintiff's motion to delay the filing of its motion for default judgment, dkt. #82, is DENIED as moot;

3. Defendant's motion to dismiss this case for lack of personal jurisdiction or transfer it to Nevada, dkt. #5, is DENIED;

4. Plaintiff's motion for default judgment against defendant, dkt. #83, is GRANTED; IT IS DECLARED that

a. Plaintiff is not liable to defendant for any surcharges on product that plaintiff ordered, received and paid for in 2006;

b. Plaintiff did not infringe any of defendant's intellectual property rights in copyrights or trade secrets relating to stove hoods; and

c. Plaintiff never agreed to allow defendant to manufacture all of plaintiff's stove hoods in perpetuity or even for a fixed period of time and therefore, did not breach any agreement when it stopped placing orders with defendant;

5. Plaintiff's motion for an award of attorney fees and costs in the amount of $7,411.82 as its share of the sanction imposed on defendant for the violation of its discovery obligations, dkt. #78, is GRANTED;

6. Plaintiff's motions for sanctions for the increased fees and costs it incurred in this litigation because of defendant's improper acts and misrepresentations, dkt. #83, is DENIED;

7. Plaintiff's request for an order making Steven Williams jointly liable with defendant for any award to plaintiff of its attorney fees and costs, dkt. #83, is DENIED; and

8. Plaintiff's motion to enjoin defendant and Steven Williams from litigating in any

other forum the same claims defendant has alleged against plaintiff in this action, dkt. #83, is DENIED.

The clerk of court is directed to enter judgment in conformance with this order and close this case.

Entered this 12th day of February, 2009.

                          BY THE COURT:

                          /s/

                          _____
                          BARBARA B. CRABB
                          District Judge